CLAY SEWER PIPE ASSOCIATION, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108523. Promulgated February 2, 1943.

*Robert Guinther, Esq.*, for the petitioner.
*Lawrence R. Bloomenthal, Esq.*, for the respondent.

534

**OPINION.**

Leech, *Judge:* Petitioner reported gross income for the taxable year in the amount of $107,648.18, which included all its receipts for services to subscribers. In the determination of the deficiency, respondent did not adjust that item. He allowed deductions of $2,280.92 not claimed on the return and disallowed deductions of "organization expense" and "production expense" in the amounts of $330.83 and $2,066.63, respectively, as claimed on the return, and $32,347.23 deducted in the return as a "Reserve for future expenses." In its petition, petitioner "consents that the deductions shown on its said return for promotion expense (in the amount of $2,066.63) and for organization expense (in the amount of $330.83) may be disallowed and consents that its income tax for the year 1939 may be redetermined after such disallowances."

The only error assigned in the petition is:

4. The Commissioner has erroneously treated all of the money received by the Petitioner during the year 1939 as "income" when, in fact, the money received by it in that year represented, in part, payments for services performed by the Petitioner in that year and for the remaining part represented prepayments to the Petitioner for services to be performed by it in succeeding years. The Commissioner has failed to distinguish between "receipts" impressed with an obligation and "income". He has erroneously refused to allow as a deduction from the "receipts" of the Petitioner a "reserve for future expenditures" in the amount of $32,347.23, although the Petitioner made its return for income taxes upon the accrual basis.

On brief, petitioner "consents" that it may be taxed upon the sum of $2,397.46. That amount apparently was its reported gross income diminished only by the deductions allowed by respondent and the contested deduction of "reserve."

No issue is raised involving the right of petitioner to exemption under any of the provisions of section 101 of the Revenue Act of 1938. In fact, from the record it appears clearly that petitioner admits it was not so exempt. Moreover, petitioner implicitly concedes that it did not act as an "agent for its principal" as in *All Russian Textile Syndicate, Inc.*, 23 B. T. A. 1392; affd., 62 Fed. (2d) 614; certiorari denied, 289 U. S. 752, but rather agreed to and did "* * * perform its services in behalf of * * *" others for a consideration. See *Creasey Corporation* v. *Helburn*, 57 Fed. (2d) 204. It is argued only that the excess of the consideration received for its services during the taxable year over its expenditures for the same period is not "taxable income" to it.

The premises of petitioner's position are stated thus:

(2) Such excess represented prepayment in 1939 for services which the Petitioner was obligated to and did perform in subsequent years. The persons who paid in such excess had an interest in such amount and were entitled to repayment in the event that the services were not performed.

(3) The excess was impressed with a trust in favor of the persons who had paid it to the Petitioner and the Petitioner could expend it only in fulfillment of the trust. Accordingly the trust fund is not required to be included as part of Petitioner's gross income.

The propriety of including an item in gross income, on the one hand, or its deduction therefrom on the other, under the revenue acts, generally rests on wholly different concepts. Nevertheless, whether petitioner means to argue that this excess was not includible in its gross income or was so includible but was deductible therefrom in computing its taxable income, its position is not sound. *West Side Tennis Club*, 39 B. T. A. 149; affd., 111 Fed. (2d) 6; certiorari denied, 311 U. S. 674; *West Side Tennis Club*, 1 T. C. 302.

Petitioner suggests that the payments it received from its shareholder-subscribers were paid for the stock in petitioner and that,

therefore, none of that consideration was income to petitioner. It cites *Creasey Corporation* v. *Helburn*, *supra*. Assuming, however, that this conclusion is sound, the record contradicts the existence of the premise. The subscriber to petitioner's services, as such, acquired no interest in petitioner nor in any of its assets, by payments for those services. The consideration paid for the stock in petitioner was the contracting of the respective stockholders for the services of petitioner. The duration of their stockholder status was measured wholly by the life of those contracts. That, as stockholders, the subscribers had rights as stockholders to share in the distribution of the net assets of petitioner upon its dissolution, even upon a basis other than that of stock ownership, does not increase or change their rights as subscribers to petitioner's services. See *Uniform Printing & Supply Co.* v. *Commissioner*, 88 Fed. (2d) 75, reversing 33 B. T. A. 1073; *Peoples Gin Co.*, 41 B. T. A. 343; affd., 118 Fed. (2d) 72. Moreover, any doubt about the matter is dispelled by the petitioner, itself. It reported all the payments received from its shareholder-subscribers as consideration for its services. It does not even now deny the correctness of that action except, possibly, as to the excess funds in dispute. That position, if taken, is inconsistent since, obviously, all the reported payments, whether or not expended in the taxable year, constituted consideration for the same thing.

It is said, however, that petitioner was so restricted during the taxable year in its use of this excess as to deprive it of the character of income in that year. Petitioner was organized and existed for the purpose of selling its services to others. The only restriction, if any, upon the use of any of the funds received by petitioner during the taxable year from its service contracts was that they should be used then or in the following years to furnish those services. That restriction is certainly not sufficient to prevent the inclusion of all of such funds, whether expended or not, in the gross income of petitioner in the taxable year when received. *Renwick* v. *United States*, 87 Fed. (2d) 123; *Commissioner* v. *Lyon*, 97 Fed. (2d) 70; *Grand Central Public Market, Inc.* v. *United States.* 22 Fed. Supp. 119; *West Side Tennis Club* (both cases), *supra;* *E. B. Elliott Co.*, 45 B. T. A. 82; *Edwin B. DeGolia*, 40 B. T. A. 845. Nor is this conclusion inconsistent with that of the Circuit Court in *Uniform Printing & Supply Co.* v. *Commissioner*, *supra*. There the annual "refunds," under the corporate bylaws, were limited to funds paid by the then customers to whom, alone, the "refunds" were distributable. They were, in fact, refunds. The right to those refunds, as the court points out, was "in no way dependent upon stock ownership * * *." It fastens upon that fact as "the determinative factor." Here a distribution by the petitioner was not limited to funds received from those sharing

in the distribution, but was to include unexpended payments for services made by those who were not subscribers at the time of that distribution. It is true that one of the factors upon which the amount of the participation of the shareholders depended was their respective payments for services rendered by the petitioner. But that fact does not characterize the distribution as a refund. *Peoples Gin Co.*, *supra*. None except stockholders in petitioner could share in any distribution of its assets. Such distribution would not be, in fact, a refund since it was not only not limited to funds paid by the distributees but it could not be said that it was "in no way dependent upon stock ownership."

It is difficult to reconcile petitioner's second argument with its implicit admission that all of its receipts from those it served were gross income, except the excess of those receipts over its expenditures for the taxable year. It would seem that all or none of those receipts were impressed with the same alleged trust. In any event, the existence of any trust is conclusively contradicted by the record. No corporate authorization existed for the creation of any trust. All the receipts of the petitioner, including those in the so-called "reserve" account during the taxable year, were subject to its withdrawal for general corporate purposes. This was recognized by H. C. Maurer, president of the petitioner, who testified that these funds were not expended during the taxable year only because no occasion existed during that year, in the judgment of the officers of the petitioner, for their judicious expenditure. We think no trust arose during the taxable year. *Mason Securities Assn.* v. *Helvering*, 102 Fed. (2d) 36, affirming 36 B. T. A. 958; *West Side Tennis Club* (both cases), *supra;* *Parkview Memorial Association*, 34 B. T. A. 406.

Petitioner received all the reported income during the taxable year. Federal income taxes are determinable upon an annual basis. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359. Petitioner admits that all of its reported income was received in the taxable year. Was any of the excess of that income over expenditures for that year deductible as a business expense under section 23 (a) of the Revenue Act of 1938? We think not.

Deductions are a matter of legislative grace. To support any deduction petitioner must bring itself squarely within the granting provision. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435. Petitioner was on the accrual basis. But even so, that it intended and may have been obligated in the taxable year to expend that excess in later years in furnishing the services for which it was paid in the taxable year, affords no basis for any expense accrual in the earlier year. During the taxable year no such expenditure had been made. No item of future expense had been contracted for. No liability then existed for the payment of any expense. It was wholly uncertain, in

the taxable year, whether and to what extent the unused income would be expended for business expenses. Thus, we think that no part of the unused or excess income of the petitioner for the taxable year was within the category of business expenses "paid or incurred" during that year, and its deduction is therefore denied. *Brown* v. *Helvering*, 291 U. S. 193; *Reuben H. Donnelley Corporation*, 22 B. T. A. 175; *Jahncke Shipbuilding Co.*, 11 B. T. A. 479; *McCauley-Ward Motor Supply Co.*, 10 B. T. A. 394; *Amigo Coal Co.*, 8 B. T. A. 598; *West Side Tennis Club* (both cases), *supra; Malloy & Co.*, 33 B. T. A. 1130.

Reviewed by the Court.

*Decision will be entered for the respondent.*

Mellott, *J.*, dissents.

———

Hill, *J.*, dissenting: The record of this proceeding and the findings of fact disclose:

(1) That petitioner was organized, operated, and financed by the producers of clay sewer pipe for the sole purpose of advancing public knowledge of the advantages of vitrified clay sewer pipe over pipe made of other materials, through the various methods set out in paragraph third of its articles of incorporation and article III of its bylaws, and for the purpose of creating a demand in the clay sewer pipe industry as a whole and not for the promotion of the sale of the products of any particular manufacturer in that industry;

(2) That petitioner's shareholders had only one share of stock each and they were and could be such shareholders by virtue only of their subscription to petitioner's operating fund and not as subscribers to capital stock or to any other capital account;

(3) That petitioner's only source of money with which to organize and carry out the purpose of its organization was the commitments of the individual producers of clay sewer pipe who agreed to participate in financing it;

(4) That all of petitioner's operating funds came from this source and that no part of such funds was or could have been used for a purpose other than that set forth in (1) above;

(5) That should petitioner cease to perform the function for which it was created, or be dissolved, its assets, including unexpended receipts, after satisfaction of all creditors' claims, must be distributed to its shareholders proportionately to the amounts of their several subscriptions paid and not on the basis of the amount of stock held.

On the basis of these disclosures it is obvious that no part of petitioner's receipts can be reckoned as income or profit to it, or can or could have been used for its own benefit in any sense other than to enable it to discharge the specific function for which it was

created. By the same token, there was no income or profit which could inure to the benefit of any of petitioner's shareholders or to other individuals.

The sole issue is, as stated at the outset of the majority opinion, Is petitioner taxable upon the excess of receipts over expenditures? This issue is covered by the assignment of error in the petition and in particular by the following language therein: "The Commissioner has failed to distinguish between 'receipts' impressed with an obligation and 'income'."

Of course, the question of whether the excess of receipts over expenditures was taxable depends upon whether the receipts were income. I think they were not. In my view, no part of the gross receipts was income to petitioner and hence we are not concerned with the question of what expenditures were or were not deductible. If there is no income to report there is nothing from which to deduct expenditures for tax purposes.

The authority and duty of this Court is to determine the correct deficiency, if any, upon all of the facts properly in the record. We are not limited in our consideration of the question presented to the legal theories adopted or advanced by the parties. If such legal theories are found to be incorrect, it is our duty to disregard them and to determine the issue presented upon the application of correct legal principles to the facts.

The conclusion reached in the majority opinion appears to be predicated in the main on the following statements therein: "Petitioner was organized and existed for the purpose of selling its services to others. The only restriction, if any, upon the use of any of the funds received by petitioner during the taxable year from its service contracts was that they should be used then or in the following years to furnish those services."

I think it clear that the quoted statements are not consistent with the facts as found and as disclosed by the record. Such facts show that petitioner was not organized and did not exist for the purpose of selling its services to others. Also, in addition to the restriction set forth in the above quoted statements, there was the further restriction that if any of such receipts were not so used they were to be refunded to the contributors. Petitioner was not an independent agency existing and operated separate and apart from the subscribers to its operating fund, but was wholly controlled by them. It neither sold services nor received compensation for services. It was a mere agency set up by certain members of the clay sewer pipe industry through which certain promotional work in the interest of the industry as a whole was carried on with funds contributed by its sponsors, with the obligation that upon the cessation of such

work any remaining funds so contributed, whether in money or other assets, should be refunded to the contributors thereof. Under such an arrangement there could not possibly be any profit or economic benefit to petitioner and hence no income to it.

Petitioner suggested in its reply brief the application to it of the provisions of section 101 (7) of the Revenue Act of 1938, but did not present the question in its pleadings. The majority opinion states that it appears clearly from the record that petitioner admits it was not exempt under such section. Such statement is obviously an inference from certain facts appearing in the record and is not intended to convey the thought that petitioner categorically made such admission. However, assuming the correctness of the inference, it was not an admission of fact, but reflected merely a legal conclusion. Neither this Court nor a party litigant is bound by such admission. It is true that petitioner's articles of incorporation recite that it was organized for profit, and in its bylaws there is a provision respecting dividends, but the provisions of such articles and bylaws as a whole completely negative the idea that petitioner was organized for profit or that there could be any net earnings to inure to the benefit of any private shareholder or individual. It was testified, in effect, at the hearing that the reason petitioner was incorporated under the General Incorporation Act of Ohio applying to organizations for profit was to avoid possible charges under the antitrust laws. Certainly the mere fact that petitioner did not plead exemption from tax under section 101, *supra*, does not constitute an admission that it was not so exempt.

It is my opinion that petitioner was exempt from tax under the cited section, but it is not necessary to so hold in order to determine that the receipts herein involved were not taxable as income. The question of whether or not such receipts were income must be determined from all the circumstances in evidence here. That question is unaffected by section 101, *supra*. In fact, the circumstances in respect of the receipts here involved may very well have been comprehended within the inducements which led to the enactment of section 101.

It is also true that petitioner filed an income tax return for the taxable year in which it reported as gross income all moneys received from the subscriber-shareholders and sought to take deductions as paid and accrued business expenses in a total amount equal to the amount reported as gross income. The fact that petitioner reported its receipts as income did not make them such. Petitioner conceived the idea that it owed no income tax. Its theory of demonstrating this fact was to report all receipts as income and to deduct the full amount thereof as impressed with the obligation to pay it all out as business expenses. The tax result to petitioner under this theory was the same

as if it had excluded such receipts as income and taken no deductions. We are not authorized in law or otherwise justified in determining an income tax on that which is not income merely because the petitioner mistakenly designated and reported it as such. It is true that at the hearing petitioner conceded that items in the amounts of $2,066.63 and $330.83, designated as promotion expense and organization expense, respectively, were not items properly deductible in its income tax return and consented that its income tax for the year involved might be determined upon the basis of the disallowance of deductions in such amounts. I think, too, that the items mentioned above would not have been deductible even if there had been income against which to apply deductions, but in my view there was no such income and, therefore, the question of their deductibility is immaterial. The consent of petitioner to be taxed on the basis of the disallowance of the deduction of such items was not an admission of fact. It was a concession based, as I deem it, upon an error in legal interpretation. Also, petitioner's consent to the determination of a deficiency based on the disallowance of deductions in the amount of the two items above mentioned does not constitute a stipulation for a deficiency in that amount. It is my view that the question of whether those items are deductible or whether any of the other items herein involved are deductible is immaterial, for the reason that none of petitioner's receipts in respect of which the deficiency herein was determined was income to it, regardless of the question of deductions.

*Uniform Printing & Supply Co.* and *Peoples Gin Co.* are cited in the majority opinion. The former case supports the conclusion which I have reached here and the latter is not applicable to the facts in this proceeding. In *Peoples Gin Co.* there was a profit to the petitioner which it distributed to its stockholders and claimed an expense deduction therefor as a patronage refund. We denied the deduction on the ground that the distribution was a dividend to the stockholders out of profits. The facts of the *Gin Co.* case present a totally different picture from that here presented. Here the petitioner had no profits and, in the very nature of its undertaking, could have none. Should it not expend all of its receipts in the promotional work in behalf of the clay sewer pipe industry, the remainder thereof was to be refunded to the contributors who were currently subscribers to the fund. Such a refund would not be a distribution of profits.

The record shows that the basis of the rate of subscriptions to petitioner's operating fund was an estimate of the amount of money required to pay the expense of a promotional program to extend over a period of at least three years. It is not reasonable to expect that petitioner could estimate to a penny the financial requirements for carrying on its work year by year, although it was expected that in the

first year receipts would exceed expenditures. The record shows, however, that for the second and third years of operations, after the program was well under way, expenditures exceeded receipts and that as some of the subscribers dropped out it was necessary to reduce the budget of expenditures in order to stay within the limit of the receipts. Subscriptions were for yearly periods and it appears that after the promotional program was organized and functioning there would be no surplus of funds of any moment which included contributions by those who were no longer subscribers to the fund. In the very nature of petitioner's operations any balance of funds on hand at any given time obviously represented almost wholly the residue of contributions of current subscribers. It is, therefore, idle to theorize as to the possibility of distributions to current subscribers of money paid in by former subscribers. The possibility of such a distribution is so remote as to occurrence and so negligible as to amount that it does not warrant consideration.

ARUNDELL and TYSON, *JJ.*, agree with this dissent.