THE SEVEN-UP COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20643.   Promulgated May 31, 1950.

*Fred L. Kuhlmann, Esq.*, and *William H. Charles, Esq.*, for the petitioner.

*Gene W. Reardon, Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge:* The respondent contends that the excess of the amounts received by petitioner from 7-Up bottlers during the taxable years over expenses incurred and paid by it for national advertising constitutes taxable income to petitioner. His argument in support of this contention is, briefly, (1) the payments of $17.50 per gallon of extract for purposes of advertising in national media were not made to petitioner as an agent or fiduciary; (2) they were received and accrued by petitioner in each taxable year under a claim of right and without restriction as to use; (3) they were commingled with business receipts and placed in petitioner's regular corporate bank accounts, where they were subject to withdrawal and use for general business purposes; and (4) even if there was a restriction upon the use of any of the funds received, viz., that they should be used in the taxable year or in the following years for national advertising, such restriction was not sufficient to prevent the inclusion of such funds, whether expended or not, in the gross income of petitioner in the taxable year when received. He cites *Clay Sewer Pipe Association, Inc.*, 1 T. C. 529; affd., 139 Fed. (2d) 130; *E. B. Elliott Co.*, 45 B. T. A. 82; *Your Health*

*Club, Inc.*, 4 T. C. 385; *Automobile Underwriters, Inc.*, 19 B. T. A. 1160; *National Airlines, Inc.*, 9 T. C. 159.

The respondent places principal reliance upon *Clay Sewer Pipe Association, Inc., supra*. There the taxpayer, an association organized to promote the use of vitrified sewer pipe, entered into contracts with member manufacturers to render services in consideration of the payment to it of 24 cents per ton of clay sewer pipe sold by them. Moneys received could be used in its general business. In its income tax return filed on the accrual basis it reported income of $107,648.18 and no tax due on account of deductions it had taken. One of the deductions taken was a "Reserve for future expenses" totaling $32,347.23, with a notation "Income deferred for expenditures for performance of contract services. * * * This amount represents the excess of income received and accrued over expenses paid and incurred representing prepayments and advance billings for services to be performed." This deduction was disallowed. In approving the disallowance, this Court pointed out that the taxpayer implicitly conceded that it did not act as agent for its principal and that it agreed to and did perform its services in behalf of others for consideration. The reasons for the disallowance were that all of the receipts of the taxpayer during the taxable year, including the so-called "reserve" account, were subject to its withdrawal for general corporate purposes; that there was not any restriction on the use of the receipts which would constitute them, or the unexpended portion thereof, a trust fund; and that prepayment for services to be rendered in the future did not prevent taxation as income in the year received.

*Clay Sewer Pipe Association, Inc., supra*, is distinguishable from the instant proceeding. The payments made by the participating bottlers were not for services rendered or to be rendered by petitioner. Neither were they part of the purchase price of the extract. They did not, therefore, constitute *earnings* received by petitioner under a claim of right and without restriction as to disposition, which petitioner would have had to include in its gross income under the rule laid down in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. While petitioner had the right to receive the bottlers' contributions under its agreements with them, all the facts and circumstances surrounding the transaction clearly indicate that it was the intention of all of the parties concerned that these contributions were to be used to acquire national advertising for the 7-Up bottled beverage and for that purpose only, and that petitioner was to be a conduit for passing on the funds contributed to the advertising agency which was to arrange for and supply the national advertising. Cf. *Central Life Assurance Society, Mutual* v. *Commissioner*, 51 Fed. (2d) 939. Although the

funds were not all expended in the year received, for reasons set forth in our findings, petitioner did expend them for national advertising, did not use them for general corporate purposes, treated the amounts on hand in the fund on its books as a liability to the bottlers, and considered itself, as evidenced by its letter of May 2, 1944, to one of the participating bottlers, merely as a trustee, handling the bottlers' money.

The facts in the instant proceeding are quite similar to those involved in *Charlton* v. *Chevrolet Motor Co.* (1934), 115 W. Va. 25; 174 S. E. 570. In that case a local Chevrolet dealer had entered into a contract with the Chevrolet Motor Co., which provided in effect that for each new car purchased the dealer would contribute $6 and the company $2.50 to a Chevrolet dealers' cooperative advertising fund. The fund was to be spent by the company in the placement of such local advertising as in the judgment of the company would be of benefit to its dealers. The contract was terminated and the dealer brought suit in equity for an accounting of the fund. The company challenged the jurisdiction of the court of equity, but the court ruled that the dealer was entitled to relief in equity because the company held the advertising funds in trust for the dealers.

The cited case supports the petitioner's contention that the amounts contributed by the bottlers constituted a trust fund for advertising purposes which it administered as agent for the bottlers, even though the petitioner made no contribution to the advertising fund, whereas in the cited case the Chevrolet Motor Co. did contribute. The commingling of the unexpended portions of the bottlers' contributions in several bank accounts with receipts from petitioner's business did not destroy their identity as trust funds. 54 Am. Jur. 199. Petitioner had on hand at all times cash and securities in excess of the amount of the unexpended funds and its books showed precisely the amounts contributed and unexpended. As custodian of the funds and agent for the bottlers, petitioner was obligated to expend them for national advertising, and any diversion for corporate or other purposes might be enjoined by the bottlers by a suit in equity. See *Portland Cremation Assn.* v. *Commissioner*, 31 Fed. (2d) 843; *Charlton* v. *Chevrolet Motor Co.*, *supra*.

In *Commissioner* v. *Wilcox*, 327 U. S. 404, the Supreme Court said:

* * * The very essence of taxable income, as that concept is used in Section 22 (a), is the accrual of some gain, profit or benefit to the taxpayer. This requirement of gain, of course, must be read in its statutory context. Not every benefit received by a taxpayer from his labor or investment necessarily renders him taxable. Nor is mere dominion over money or property decisive in all cases. In fact, no single, conclusive criterion has yet been found to determine in all situations what is a sufficient gain to support the imposition of an income tax.

No more can be said in general than that all relevant facts and circumstances must be considered. * * *

The respondent has determined that the amounts received by petitioner from the bottlers in each of the taxable years should be included in gross income and the amounts expended for advertising should be taken as deductions. The effect of such a determination is to charge petitioner with a gain or profit to the extent of the excess of receipts over expenditures. But petitioner did not receive the bottlers' contributions as its own property. They were burdened with the obligation to use them for national advertising. No gain or proft was realized on their receipt because of this offsetting obligation. All of the relevant facts and circumstances convince us that the respondent erred in including the payments made by the bottlers in petitioner's gross income for the taxable years, and we so hold.

The conclusion reached renders it unnecessary to discuss or decide whether petitioner was entitled to relief under the provisions of either section 736 (b) or section 721 of the Internal Revenue Code.

*Decision will be entered under Rule 50.*