OPINION Petitioner contends that it is exempt from taxation under section 501(c) (4)[3] dealing with civic leagues or orgamzations not organized for profit but operated exclusively for the promotion of social welfare or local associations of employees, the membership of which is limited to employees of a designated person or persons in a particular municipality and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes. Section 1.501(c) (4)-l, Income Tax Regs.,[4] states that a civic league or organization may be exempt as a 501(c) (4) organization if it is a nonprofit organization and is operated exclusively for promotion of social welfare, defined as “tlie common good and general welfare of the people of the community.” The cases indicate that the promotion of social welfare is a limitation on civic leagues as well as “organizations,” thereby approving of the regulations. People's Educational Camp Society, Inc. v. Commissioner, 331 F. 2d 923 (C.A. 2, 1964), affirming 39 T.C. 756 (1963). It has been held that where the primary economic benefit from an organization is limited to that organization’s members, the oz’ganization is not operated exclusively for the social welfare within the meaning of the statute. Consumer-Farmer Milk Coop. v. Commissioner, 186 F. 2d 68 (C.A. 2, 1950), affirming 13 T.C. 150 (1949). In order for an organization to be exempt from tax under section 501 (c) (4), the statute requires that it be one which promotes the common good and general welfare of people in a community as a whole. United States v. Pickwick Electric Membership Corp., 158 F. 2d 272 (C.A. 6, 1946). Petitioner in the instant case was organized for the benefit of its members only. These members were a small group interested in obtaining group insurance. Petitioner offered its benefits to only the limited class of its members and their employees. There is not in such an organization the requisite civic concern to constitute “social welfare,” and therefore petitioner does not qualify for tax exemption under section 501(c) (4). Petitioner does not claim exemption under any other section of the Code.[5] Petitioner in its brief concedes that if it is not exempt from Federal income tax under section 501(c) (4), the interest it received constitutes taxable income to it.[6] Petitioner contends that the premiums received from its members and the retroactive rate credits received from the insurance company are not income but that the premiums are contributions to the “trust estate” by its members and the rate credits are merely a part of such contributions returned to petitioner and held in trust by petitioner for its members. Under the specific terms of the trust agreement all moneys taken in by the petitioner from its members are specifically set aside for the purpose of procuring insurance for the participant employers or of being-returned to the members. Respondent does not deny that under the terms of the “trust agreements” it is a fact that all moneys taken in by petitioner (except interest income) are held in trust for specific uses for the members’ benefit or to be returned to the members. Respondent states that he would never have determined the deficiency if petitioner had operated in accordance with its trust agreement. Respondent argues that under the agreement of June 30,1954, the trustees had no right to set up a reserve of a portion of the retroactive rate credits and in so doing appropriated the amounts to petitioner’s own purposes or in substance made a “claim of right” to the amounts. We do not agree with this contention of respondent. The trust agreement specifically provided that the trustees were empowered to “make refunds of unearned premiums to the employers at such times as may be deemed” by them “to 'be proper.” It likewise specifically provided that all such amounts were to be returned to employer members, even though such employer members might not be the identical persons or groups as the employer members who had paid in the funds, because of members being added and members dropping out. In several cases, the first being Seven-Up Co., 14 T.C. 965 (1950), we have considered the question of whether amounts paid into a fund by various persons was income to the recipient or was held as a “trust fund.” The taxpayer in the /Seven-Up case sold an extract to franchise bottling companies. The bottlers had exclusive franchises and controlled sales and promotions in their own territories with the petitioner furnishing advertising materials to them at cost. The bottlers in order to tie in advertising on a national basis came together and set up an informal fund to handle national advertising, paying into the fund $17.50 per gallon of extract purchased. The moneys were paid to the Seven-Up Co. which commingled the funds in its own accounts but kept them separated on its books and records and dispersed them for the intended purposes. In that case we held that moneys received were subject to a trust obligation and that any diversion of that money could be enjoined in equity and was not therefore income to a taxpayer which had no claim of right to the funds. In the recent case of Angelus Funeral Home, 47 T.C. 391 (1967), we held that certain predeath funeral payments received by the taxpayer were not taxable income when received. The taxpayer in that case entered into contracts for predeath funeral payments to be applied against the cost of the taxpayer’s services at the customer’s death or forwarded at that time to another 'funeral home to apply against such cost if the customer’s death occurred outside the reasonable range of the taxpayer’s service. Our holding was on the basis that under the holding in the Seven-Up case the payments were held as a trust fund. We specifically limited our holding in Angelus Funeral Home to those contracts which stated that the sum would be held by the taxpayer in an irrevocable trust for funeral purposes and would accrue to the funeral home only upon performance of its services. In the recent case of Dri-Power Distributors Association Trust, 54 T.C. 460 (1970), we reaffirmed our holdings in Seven-Up and Angelus Funeral Home. In that case we held that amounts were not includable in the gross income of the trust which served as a mere conduit for the expenditure of the contributions for advertising, freight, and promotional purposes. In that case the distributors of the Dri-Power Co. had been paying all advertising, freight, and promotional costs of the product themselves. They came together and formed an association which set up the fund to handle advertising, freight, and promotional costs and contributed a stipulated amount to the fund. The instant case is indistinguishable in principle from Dri-Power Distributors Association Trust, supra. In this case the agreement between the trustees and the employer members specifically provided that the funds were to be used to pay premiums on insurance policies and to make refunds of unearned premiums to the employers at times deemed proper to the trustees. The trustees never had unrestrained use of the funds in their possession and were a mere conduit between the member participants and the insurance company. Although the respondent seems to raise the issue of the legality of the first trust instrument under New York law, we find that to be irrelevant under the doctrine of Seven-Up Co., supra, where the trust arrangement was very informal, but recognized by all the parties involved. Under the rationale of Broadcast Measurement Bureau, Inc., 16 T.C. 988 (1951), we do not consider the method of petitioner’s computation of refunds on the basis of insurance in force by current member participants, thereby excluding participants insured during the year the retroactive rate credits were earned who had subsequently dropped out of the trust, to cause the funds not to be held in trust for the employer members. Even if certain member participants will be benefited by the moneys contributed to the trust by other member participants who subsequently drop out, the rate credits are not income to the trust but amounts it is required to distribute to the beneficiaries. We hold that petitioner’s only receipts of “taxable income” are from interest. Its other receipts were merely trust funds to be disbursed for insurance premiums or operation expenses or at a proper time returned to the “trust beneficiaries.” 'Petitioner filed no Federal income tax returns for the years here in issue and did not file Forms 990-T returns required by organizations exempt from Federal income tax as petitioner claims to be. Seeking to excuse its failure, petitioner argues that its trustees were not informed by counsel or by their accountants that returns of any nature should have been filed. Erroneous advice or a taxpayer’s belief that no return is required is not reasonable cause for failure to file returns where the regulations clearly state that a return should be filed. See Knollwood Memorial Gardens, 46 T.C. 764, 795 (1966), and cases there cited. Petitioner here seeks to be excused because of the failure of its advisers to advise it to file such returns. There is no showing that petitioner ever sought direct advice whether to file. A taxpayer is not relieved from the legal obligation to file, and the additions to tax for failing to fulfill that obligation merely because it was not offered unsolicited advice. Knollwood Memorial Gardens, supra. We sustain respondent in his determination of additions to tax for failure of petitioner to file returns. Decision will be entered wader Bule 50. SEC. 501. EXEMPTION PROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (a) Exemption Ekom Taxation.- — An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502, 503 or 504. ****** * (c) List op Exempt Organizations. — The following organizations are referred to in subsection (a) : ****** ‡ (4) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes. Sec. 1.501 (c) (4) — 1 Civic organizations and local associations of employees. (a) Civic organizations — (1) In general. A civic league or organization may be exempt as an organization described in section 501(c) (4) if— (1) It is not organized or operated for profit; and (ii) It is operated exclusively for the promotion of social welfare. (2) Promotion of social welfare — (i) In general. An organization is operated exclusively for the promotion of social welfare if it is primarily engaged in promoting in some way the common good and general welfare of the people of the community. An organization embraced within this section is one which is operated primarily for the purpose of bringing about civic betterments and social improvements. A “social welfare” organization will qualify for exemption as a charitable organization if it falls within the definition of “charitable” set forth in paragraph (d) (2) of section 1.501(c) (3) — 1 and is not an “action” organization as sot forth in paragraph (c) (3) of section 1.501(c) (3) — 1. Petitioner in its brief specifically states tbat it is not claiming exemption under see. 501(c)(6) dealing with, among other organizations, “real-estate boards.” At the trial petitioner’s counsel had indicated that because of its close connection with the association which was exempt under this section, it might likewise be so exempt. Since petitioner now specifically disavows such a contention, we need not consider the question. Petitioner does not contend that it is exempt under sec. 501(e) (9) and from the facts we have set forth it would appear that petitioner does not claim exemption under this section since its membership is not limited to “employees.” As we understand this concession it embraces offsetting all expenses of petitioner’s operation against its receipts from its employer members, so that the interest is taxable in full except for the exemption of §100 allowed by sec. 163(a), I.R.C. 1939, and see. 642(b), I.R.C. 1954. In any event any argument that amounts charged to employer members for expenses of petitioner’s operation were not to be used specifically for such purpose and if in excess of the amount needed in a particular year for such purpose applied to such purpose for a subsequent year, would be completely inconsistent with petitioner’s argument that these payments constituted the “trust estate” contributed by the “trust beneficiaries” and were therefore not “income” of the trust.