**MICHIGAN RETAILERS ASSOCIATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. G85–689–CA5.

United States District Court, W.D. Michigan, S.D.

Jan. 5, 1988.

---

Stewart L. Mandill, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for plaintiff.

R. Todd Luoma, Tax Division, Dept. of Justice, Washington, D.C., for defendant.

**OPINION OF THE COURT**

BELL, District Judge.

This is an action under 26 U.S.C. § 7422 for refund of income taxes paid by plaintiff

Michigan Retailers Association for tax years 1976 and 1977. Now before the Court are cross-motions for summary judgment under Fed.R.Civ.P. 56, supported by an extensive stipulation of facts.

## I

Plaintiff Michigan Retailers Association, ("Association"), is a not-for-profit, tax exempt corporation whose purpose is generally to promote and improve retail business and consumer-retailer relations in Michigan. Members of the Association are retailers domiciled and doing business in Michigan. The Association is the sole shareholder of Michigan Retailers Services, Inc., a for-profit corporation whose purposes include the development, administration and promotion of insurance plans for the benefit of Association members. Since 1964, the Association has been the master policyholder of two group health insurance policies issued by Inter-Ocean Insurance Company.[1] Under these policies and through the efforts of Michigan Retailers Services, the Association has made low cost health insurance available to its members.

In 1975, the Association, as master policyholder, began receiving experience premium credits from Inter-Ocean Insurance Company because premiums received from Association members substantially exceeded claims paid for their benefit. In 1976 and 1977, the Association received a total of $287,320.60 in premium credits from Inter-Ocean Insurance Company. Although these funds were commingled with other funds in the Association's general business account, it is undisputed that they were held for the benefit of insured Association members.

In 1982, the Internal Revenue Service determined the Association should have reported the 1976 and 1977 premium credits as taxable business income, and assessed an additional tax in the amount of $109,676 plus interest in the amount of $54,819.13. The Association paid the amount assessed and instituted this action for refund thereof.

## II

The Association contends the premium credits cannot be deemed "income" because they were received and held "in trust" for the benefit of insured members. Indeed, premium credits received and held by a tax-exempt organization pursuant to a written trust agreement for the benefit of participating members have been held not to be "income" to the organization. *New York State Association of Real Estate Boards Group Insurance Fund v. Commissioner*, 54 T.C. 1325 (1970). Further, the Association contends, such a holding is not undermined by the absence of a formal written trust agreement. In *Seven-Up Co. v. Commissioner*, 14 T.C. 965 (1950), the Tax Court considered "all relevant facts and circumstances" in determining that funds received by a taxpayer were nontaxable "trust funds" even in the absence of an express trust agreement.

Many of the factors considered in *Seven-Up Co. v. Commissioner* are present in this case as well. It is undisputed that:

(a) the premium credits received, although commingled with other funds, were segregated in the Association's financial records;

(b) the premium credits were earmarked for use for the benefit of insured members;

(c) the premium credits were credited to a liability account;

(d) the Association's chief officer and board of directors believed they were obliged to use the premium credits for the benefit of insured members;

(e) during and after the tax years in question, the Association has maintained cash on deposit in amounts at least equal to premium credits held;

(f) In 1978, the Association executed a Declaration of Trust, formally acknowledging its rights and responsibilities with respect to premium credits received;

(g) since 1980, the Association has continuously used premium credits for the benefit of insured members;

---

**1.** In 1982, Inter-Ocean Insurance Company was replaced by Equitable Life Assurance Society of America as group health insurer for the Association.

(h) there is no indication the Association has at any time used premium credits for its own purposes or in derogation of insured members' interests.

Here, consistent with the facts in *Seven-Up Co. v. Commissioner,* the Association was constrained, under the attending circumstances and equities, to use the premium credits for the benefit of insured members. The Association, as master policyholder was merely the conduit through which excess premiums were returned by the insurer for the benefit of insured members. The Association did not receive the premium credits as its own property, as commissions or fees for services rendered. The Association did not assert any claim of right to the premium credits. Nor did the Association reap any gain or profit directly from the premium credits. That the Association commingled the credits with other funds and incidentally earned interest while holding them does not defeat their "trust fund" nature. *Seven-Up Co. v. Commissioner,* at p. 965, *Angelus Funeral Home v. Commissioner of Internal Revenue,* 407 F.2d 210, 212 (9th Cir.1969).

When, in 1978, the Association executed a Declaration of Trust, formally acknowledging its rights and responsibilities with respect to the premium credits, the only change appears to have been in form, not of substance. There appears to be no difference in the Association's handling of the premium credits before and after the establishment of the formal trust arrangement. Yet, the Government has treated the 1976 and 1977 premium credits as income, while treating post–1977 premium credits as nontaxable trust funds. The Government's approach exalts form over substance.

The Government maintains there is a substantive difference which justifies treating the 1976 and 1977 premium credits as income. Prior to establishment of the formal trust arrangement, it is argued, insured members had no power to enforce the Association's fiduciary duty to use the credits for their benefit. This "beneficiaries" power to enforce is said to have been critical to the ruling in *Seven-Up Co. v. Commissioner.* The Government suggests that in the absence of such power to enforce, a constructive trust should not be found to have existed in 1976 and 1977, since the Association had the unfettered *right,* albeit unexercised, to use the funds as its own.

The Government's reasoning in unpersuasive. First, even assuming the Association had the "right" to use the premium credits as its own property, the undisputed fact is that it did not do so. The Association felt morally constrained to treat the premium credits as trust funds. What the Government proposes is to penalize the Association through taxation where it did what is morally right simply because it was not compelled to so act by some element of coercion, e.g., a binding express trust agreement. To tax the premium credits as income because the Association *could have* appropriated them to its own purposes is to ignore two unquestioned realities: (1) the Association did not do so; and (2) the opportunity to do so has long since expired. Again, the Government's position exalts form over substance.

Second, the Government misconstrues *Seven-Up Co. v. Commissioner.* The Tax Court's ruling therein does not establish that a constructive trust can be deemed to exist only where the "trust beneficiaries" have a legal remedy to enforce their rights. Quite contrarily, a fair reading of *Seven-Up Co. v. Commissioner* indicates the beneficiaries have a right to sue in equity *because* a constructive trust is deemed to exist.

Moreover, insured members of the Association may have had a similar capacity to protect their interest in the premium credits through an action in equity. For the Association, as master policyholder, and through its agent Michigan Retailers Services, received premium payments from its members for the purpose of procuring health insurance. The Association thus stood in a fiduciary relationship to its members. In discharging its responsibility to procure insurance, the Association expended less than it had collected in premiums, the surplus being realized in the form of premium credits. As fiduciary, the Associ-

ation might very well have been accountable to its insured members for the disposition of such surplus. See A.W. Scott, *The Law of Trusts,* (3d ed. 1967) vol. 5, §§ 502, 503 and vol. 2, § 170.22.

Accordingly, the Court finds the present case indistinguishable from *Seven-Up Co. v. Commissioner.*[2] The premium credits received by the Association should not be treated as income. They are in the nature of trust funds, exempt from income taxation. Having determined the premium credits are not income, the Court need not reach the question whether they are taxable as "unrelated business income." The Association is entitled to refund of $164,-495,13, representing taxes and interest wrongfully assessed for tax years 1976 and 1977, plus interest.

---

**2.** The Government's reliance upon *Professional Insurance Agents of Michigan v. Commissioner,* 78 T.C. 246 (1982) *aff'd* 726 F.2d 1097 (6th Cir.1984) and *United States v. American Bar Endowment,* 477 U.S. 105, 106 S.Ct. 2426, 91 L.Ed.2d 89 (1986) is misplaced. In both cases, premium credits were deemed income to the receiving organization precisely because they had not been treated as trust funds by the organization.