T.C. Memo. 1995-610


UNITED STATES TAX COURT


ELLWEST STEREO THEATRES OF MEMPHIS, INC., ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 3891-94, 3892-94          Filed December 27, 1995.
            3894-94, 3895-94
            3896-94, 3897-94
            3898-94, 3902-94
            3903-94, 3904-94
            3906-94, 3908-94.

---

[1] Cases of the following petitioners are consolidated
herewith:  Ellwest Stereo Theatres, Inc. of Phoenix, docket No.
3892-94; Jolar Cinema, docket No. 3894-94; M.I.C. Limited,
docket No. 3895-94; Michigan Reef Development Corp., docket No.
3896-94; Premium Films, Ltd., docket No. 3897-94; Jolar Cinema of
San Diego, Ltd., docket No. 3898-94; A.J. Films, docket No.
3902-94; Ellwest Stereo Theatres of Fort Worth, Inc., docket No.
3903-94; Corporate Investments, Inc., docket No. 3904-94; Ellwest
Stereo Theatres, Inc. of Kansas City, docket No. 3906-94; Ellwest
Stereo Theatres of Youngstown, Inc., docket No. 3908-94.

Over several years Ps made payments to related foreign corporations without reporting the payments on Forms 1042 or withholding and paying the tax due. Ps sought to avoid additions to tax under secs. 6651(a)(1), 6656(a) and 6653(a), I.R.C., on the grounds, inter alia, that the governing law was complex, that they relied on accountants and counsel, and that they cooperated fully with R as soon as they discovered their mistake. Held: The additions are sustained.

Robert E. Miller and Edith S. Thomas, for petitioners.

Alexandra E. Nicholaides and Eric R. Skinner, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge: These cases were consolidated for purposes of trial, briefing, and opinion pursuant to Rule 141(a).[2] Petitioners sought redetermination of deficiencies and additions to tax determined by respondent as follows:

Ellwest Stereo Theatres of Memphis, Inc., docket No. 3891-94

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6656 |
| 1985 | $7,950 | $1,988 | $398 | $4,306 | $795 |

---

[2] All Rule references are to the Tax Court Rules of Practice and Procedure and, unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue.

Ellwest Stereo Theatres, Inc. of Phoenix, docket No. 3892-94

|  |  | Additions to Tax | | | |
|  |  | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6653(a)(2) | 6656 |
| 1985 | $15,450 | $3,862 | $772 | $8,368 | $1,545 |

Jolar Cinema, docket No. 3894-94

|  |  | Additions to Tax | | | |
|  |  | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6653(a)(2) | 6656 |
| 1985 | $8,100 | $2,025 | $405 | $4,387 | $810 |

M.I.C. Limited, docket No. 3895-94

|  |  | Additions to Tax | | |
|  |  | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6656 |
| 1988 | $31,462 | $7,866 | $1,573 | $3,146 |
| 1989 | 75,113 | 18,778 | --- | 7,511 |
| 1990 | 30,375 | 7,594 | --- | 3,038 |
| 1991 | 53,311 | 13,328 | --- | 5,331 |

Michigan Reef Development Corp., docket No. 3896-94

|  |  | Additions to Tax | | | | | |
|  |  | Sec. | Sec. | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6653(a)(1)(A) | 6653(a)(1)(B) | 6653(a)(2) | 6656 |
| 1982 | $15,156 | $3,789 | $758 | --- | --- | $14,893 | $1,516 |
| 1983 | 23,339 | 5,835 | 1,167 | --- | --- | 18,871 | 2,334 |
| 1984 | 21,367 | 5,342 | 1,068 | --- | --- | 14,270 | 2,137 |
| 1985 | 19,568 | 4,892 | 978 | --- | --- | 10,599 | 1,957 |
| 1986 | 17,892 | 4,473 | --- | $895 | $8,043 | --- | 1,789 |
| 1987 | 11,918 | 2,980 | --- | 596 | 4,316 | --- | 1,192 |
| 1988 | 8,395 | 2,099 | 420 | --- | --- | --- | 840 |
| 1989 | 11,931 | 2,983 | --- | --- | --- | --- | 1,193 |
| 1990 | 11,074 | 2,769 | --- | --- | --- | --- | 1,107 |

Premium Films, Ltd., docket No. 3897-94

| | | | | Additions to Tax | | | |
|---|---|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6653(a)(2) | Sec. 6656 |
| 1980 | $22,544 | $5,636 | $1,127 | --- | --- | --- | $2,254 |
| 1981 | 51,067 | 12,767 | 2,553 | --- | --- | $65,147 | 5,107 |
| 1982 | 48,642 | 12,160 | 2,432 | --- | --- | 47,798 | 4,864 |
| 1983 | 38,715 | 9,679 | 1,936 | --- | --- | 31,305 | 3,872 |
| 1984 | 33,238 | 8,310 | 1,662 | --- | --- | 22,198 | 3,324 |
| 1985 | 28,672 | 7,168 | 1,434 | --- | --- | 15,530 | 2,867 |
| 1986 | 9,285 | 2,321 | --- | $464 | $4,174 | --- | 928 |
| 1987 | 3,421 | 855 | --- | 171 | 1,239 | --- | 342 |
| 1988 | 28,791 | 7,198 | 1,440 | --- | --- | --- | 2,879 |
| 1991 | 1,210 | 302 | --- | --- | --- | --- | 121 |

Jolar Cinema of San Diego, Ltd., docket No. 3898-94

| | | | Additions to Tax | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6656 |
| 1985 | $8,400 | $2,100 | $420 | $4,550 | $840 |

A.J. Films, docket No. 3902-94

| | | | Additions to Tax | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6656 |
| 1985 | $17,250 | $4,312 | $862 | $9,343 | $1,725 |

Ellwest Stereo Theatres of Fort Worth, Inc., docket No. 3903-94

| | | | Additions to Tax | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6656 |
| 1985 | $4,650 | $1,162 | $232 | $2,519 | $465 |

Corporate Investments, Inc., docket No. 3904-94

| | | | | Additions to Tax | | | |
|---|---|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6653(a)(2) | Sec. 6656 |
| 1984 | $5,850 | $1,462 | $292 | --- | --- | $3,907 | $585 |
| 1985 | 5,400 | 1,350 | 270 | --- | --- | 2,925 | 540 |
| 1986 | 5,400 | 1,350 | --- | $270 | $2,428 | --- | 540 |
| 1987 | 5,400 | 1,350 | --- | 270 | 1,956 | --- | 540 |
| 1988 | 660 | 165 | 33 | --- | --- | --- | 66 |

Ellwest Stereo Theatres, Inc. of Kansas City, docket No. 3906-94

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| | | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6653(a)(2) | 6656 |
| 1985 | $29,850 | $7,463 | $1,492 | $16,168 | $2,985 |

Ellwest Stereo Theatres of Youngstown, Inc., docket No. 3908-94

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| | | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6653(a)(2) | 6656 |
| 1985 | $20,250 | $5,062 | $1,012 | $10,968 | $2,025 |

At trial petitioners conceded that they are liable for the deficiencies. The only issues remaining for decision are: (1) Whether petitioners are liable for additions to tax under section 6651 for failure to file Forms 1042 (Annual Withholding Tax Return for U.S. Source Income of Foreign Persons) in connection with certain payments they made to foreign corporations; (2) whether petitioners are liable for additions to tax under section 6656 for failure to withhold and deposit the Federal income taxes due on such payments; and (3) whether petitioners are liable for additions to tax under section 6653(a) for negligence or intentional disregard of rules or regulations.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the joint exhibits attached thereto are incorporated herein by this reference. At the time the petitions were filed the principal office or agency for each petitioner was in Durand, Michigan. Most, if not all, of

petitioners were engaged in the adult entertainment business during the taxable years at issue. A.J. Films, Ellwest Stereo Theatres of Fort Worth, Ellwest Stereo Theatres of Phoenix, Ellwest Stereo Theatres of Youngstown, Jolar Cinema, and Premium Films no longer conduct business.

During the taxable years at issue, all petitioners were owned, in whole or part, by Harry V. Mohney (Mohney), either directly or indirectly as one of several beneficiaries of a trust. Mohney directly owned 100 percent of the stock of Corporate Investments. Mohney and his children owned beneficial interests in the Durand Trusts, a group of five domestic trusts, which owned all the stock of Michigan Reef Development Corp. The Durand Trusts also owned all the stock of Dynamic Industries Ltd., a domestic corporation of which M.I.C. Limited was the wholly owned subsidiary. Mohney together with three family members and a business associate named Elizabeth Scribner (Scribner) were the beneficiaries of the Amaranta Trust, a foreign trust that owned all the stock of several foreign holding companies. All remaining petitioners were first- or second-tier wholly owned subsidiaries of two of these foreign holding companies: Fun Films, Ltd., located in the Turks and Caicos Islands, and Caribbean Films, N.V., whose residence for Federal income tax purposes was the Netherlands Antilles. Among the foreign corporations existing under the Amaranta Trust umbrella were also two others of significance to these cases:

European Investments, N.A., whose residence for Federal income tax purposes was the Netherlands Antilles, and Petro Land Drilling & Development, whose residence for Federal income tax purposes was the Cayman Islands.

At various times between 1980 and 1991 petitioners made payments to Fun Films, Caribbean Films, European Investments, and Petro Land Drilling & Development. Eight petitioners made only a single payment during this period. Each of the eight transferred funds to Fun Films in January 1985. Canceled checks for these payments to Fun Films bear the word "loan", and the payments were characterized as loans on petitioners' books. There is no documentation, however, that confirms the existence of a debtor-creditor relationship between any of petitioners and Fun Films. Moreover, Fun Films has never paid interest on the "loans" or repaid the principal. Petitioners did not file Forms 1042, Annual Withholding Tax Return for U.S. Source Income of Foreign Persons, for any year in which the payments were made to the foreign corporations, as required by section 1.1461-2, Income Tax Regs. Nor did petitioners withhold and deposit Federal income tax with respect to these payments, as required by sections 1442(a) and 6302.

During the years at issue, petitioners engaged Modern Bookkeeping, Inc. (Modern), to provide bookkeeping services and prepare their tax returns. Modern employed a number of accountants, one of whom was Tom Tompkins (Tompkins). Tompkins

was not a certified public accountant, having failed the C.P.A. examination at least once. An attorney named Lee Klein (Klein) provided legal services for Modern and its clients. In 1984 Federal agents seized a large quantity of books and records at Modern in connection with a criminal investigation. In 1987 Klein retained David Shindel (Shindel), a certified public accountant, on behalf of Modern and a number of its clients, including two of petitioners. The purpose of the retainer was to review corporate books and records for compliance with the tax laws. The scope of Shindel's retainer subsequently expanded to include additional petitioners as the extent of noncompliance among Modern's clients became evident. In 1988 the criminal investigation of persons working for, or associated with, Modern resulted in the indictment of Mohney, Klein, Tompkins, and Scribner for conspiracy to defraud the Government by impeding the Internal Revenue Service (IRS). Each was subsequently convicted of this or a related offense.

In or about 1990 Shindel became aware that several of Modern's clients were making payments to foreign companies. By 1991 he had uncovered evidence of prior payments extending back several years. Available records concerning these payments were in some cases incomplete; it is not clear, however, to what extent this was attributable to the earlier Government seizure. For example, there were canceled checks payable to Fun Films dated January 1985 that bore the word "loan", but Shindel found

no other documentation for these transactions.  Other payments were evidenced by contracts, leases, and buy-sell agreements, which Shindel reviewed.  Lacking expertise in foreign tax matters, Shindel made inquiries in order to determine the tax obligations arising from these payments.  He received the impression that Tompkins, who was preparing most of the tax returns at that time, was not knowledgeable about the reporting and withholding requirements for payments to foreign persons.  Nor was Shindel satisfied that his clients were sufficiently sophisticated to determine the applicable requirements.  He sought expert advice from two outside attorneys, one a senior tax partner at a Michigan law firm and the other a tax partner at a Washington, D.C., firm.  His consultations with these attorneys concerning the payments at issue began either in early 1990 or in late 1991 or 1992.  The attorneys advised him orally of their views; neither furnished Shindel a written opinion.  Shindel advised Modern of the problems he had identified.  Petitioners made no further payments to the related foreign corporations after 1991.

Meanwhile, the IRS began an audit of several of petitioners in 1990.  The audit was conducted on Modern's premises by Revenue Agent Berniece Petzold (Petzold).  In the late winter or early spring of 1993 Petzold questioned Shindel regarding certain canceled checks she had found that had been cashed abroad.  They discussed the reporting requirements applicable to these

payments.  Thereafter Shindel had Modern personnel compile a summary of all the payments to foreign companies that he could trace, and presented it to Petzold.  Under Shindel's instructions, Modern also prepared Forms 1042 on behalf of four petitioners to report payments made between 1980 and 1991 to Caribbean Films, European Investments, and Petro Land Drilling & Development.  Shindel was unable to secure the signature of a corporation officer for any of these forms, however.  The unexecuted Forms 1042 were mailed to the IRS on June 4, 1993, but without authorized signatures they were invalid, and the IRS did not file them.  No Forms 1042 were submitted for the payments to Fun Films in 1985 by the other eight petitioners. This was because Shindel had concluded that if these payments constituted loans, no reporting would have been required.  Notices of deficiency were mailed to petitioners on December 8, 1993.

OPINION

Additions to Tax Under Sections 6651 and 6656

An addition to tax is imposed under section 6651 for failure to file a return within the prescribed period, unless it is shown that such failure was due to reasonable cause and not due to willful neglect.  Sec. 6651(a)(1).  Form 1042 constitutes a return for purposes of this section.  Secs. 6651(a)(1), 6001; sec. 1.1461-2(e), Income Tax Regs.  The amount of the addition is 5 percent of the amount required to be shown as tax for each month that the delinquency persists, up to a maximum of

25 percent.  An addition to tax is imposed under section 6656(a) for failure to make timely deposit of tax with a Government depositary, unless it is shown that such failure was due to reasonable cause and not due to willful neglect.  For additions to tax assessed after October 21, 1986, the amount of the addition under section 6656(a) is 10 percent of the underpayment.  Sec. 6656(a).  For deposits required to be made after December 31, 1989, the addition is 10 percent of the underpayment in cases where the delinquency persists for 15 days or more.  Sec. 6656(b)(1)(A)(iii).

For purposes of both sections, the delinquency is due to reasonable cause if the taxpayer exercised ordinary business care and prudence but was nevertheless unable to perform its tax obligations in timely manner.  Brewery v. United States, 33 F.3d 589, 592 (6th Cir. 1994); In re Biomaterials Corp., 954 F.2d 919, 923 (3d Cir. 1992); Housden v. Commissioner, T.C. Memo. 1992-91; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  The delinquency is due to willful neglect if it resulted from a conscious decision or from reckless indifference.  United States v. Boyle, 469 U.S. 241, 245 (1985).  The plain language of the proviso in both sections 6651(a)(1) and 6656(a) requires that reasonable cause and the absence of willful neglect be established as of the time that performance of the relevant obligation was due. See Industrial Indemnity v. Snyder, 54 AFTR 2d 84-5127, 84-1 USTC par. 9507 (E.D. Wash. 1984).  Thus, whether the taxpayer acts in

good faith and with ordinary business care and prudence in attempting to comply with its obligations after the deadline for performance has passed is of little or no direct relevance to the taxpayer's liability for the additions to tax under these sections.  The burden of proving reasonable cause and the absence of willful neglect is on the taxpayer.  Rule 142(a).

Petitioners advance five arguments.  We will consider each in turn.

### 1.  Complexity

First, petitioners argue that the reporting and withholding obligations that arose from their payments to the foreign corporations involve a highly complex interrelationship among regulations, administrative guidance, and treaty provisions which only a very sophisticated taxpayer could reasonably be expected to comprehend.

Complex legal provisions may reasonably be susceptible of different interpretations.  In some cases taxpayers have succeeded in avoiding additions to tax by showing that the deficiency resulted from an honest and reasonable misunderstanding of complex law.  Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987) (no negligence for purposes of sec. 6653(a)); Yelencsics v. Commissioner, 74 T.C. 1513, 1533 (1980) (same); Belz Inv. Co. v. Commissioner, 72 T.C. 1209, 1233-1234 (1979), affd. 661 F.2d 76 (6th Cir. 1981) (same).  That tax obligations are complex does not necessarily make

noncompliance reasonable, however.  Edgar v. Commissioner,
56 T.C. 717, 762-763 (1971); Smith v. Commissioner, T.C. Memo.
1993-203.  Even if we grant that the reporting and withholding
obligations involved in these cases are relatively complicated,
petitioners have not demonstrated that this complexity was
responsible for their failure to comply.  No contemporaneous
corporate documents were offered as evidence; no corporate
officers were called to testify.  Petitioners have not persuaded
us that they were not in fact aware of their obligations.  They
have not satisfied their burden.

## 2.  Reliance on Professionals

Petitioners argue that because of their lack of
sophistication, they relied on their accounting service to ensure
tax compliance.  Their accounting service failed to do its job
properly.  Nevertheless, in their view this reliance was
consistent with ordinary business care and prudence under the
circumstances.

The responsibility to file returns and pay tax when due
rests upon the taxpayer and cannot be delegated; in general, the
taxpayer must bear the consequences of any negligent errors
committed by its agent.  Logan Lumber Co. v. Commissioner,
365 F.2d 846, 854 (5th Cir. 1966); Pritchett v. Commissioner,
63 T.C. 149, 173-175 (1974); Abernathy v. Commissioner, T.C.
Memo. 1992-237.  There is a well-recognized, albeit narrow,
exception to this rule.  When the taxpayer selects a competent

tax adviser and supplies him with all relevant information, it is consistent with ordinary business care and prudence to rely upon his professional judgment as to the taxpayer's tax obligations. United States v. Boyle, supra at 250-251; Commissioner v. American Assocation of Engrs. Employment, Inc., 204 F.2d 19 (7th Cir. 1953); Haywood Lumber & Mining Co. v. Commissioner, 178 F.2d 769, 771 (2d Cir. 1950). In order to qualify for this exception the taxpayer must demonstrate that: (1) Its tax adviser or return preparer had sufficient expertise to justify reliance, Zabolotny v. Commissioner, 97 T.C. 385, 401-402 (1991), affd. in part and revd. in part on other grounds 7 F.3d 774 (8th Cir. 1993); cf. Patin v. Commissioner, 88 T.C. 1086, 1129-1131 (1987), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988); Hoffman v. Commissioner, T.C. Memo. 1982-380, (2) the taxpayer provided necessary and accurate information, Coldwater Seafood Corp. v. Commissioner, 69 T.C. 966, 974 (1978); cf. Pessin v. Commissioner, 59 T.C. 473, 489 (1972), and (3) the taxpayer actually relied in good faith on the tax adviser's or return preparer's judgment, New York State Association. of Real Estate Bds. Group Ins. Fund v. Commissioner, 54 T.C. 1325, 1336 (1970); Kenner v. Commissioner, T.C. Memo. 1974-273.

There is no evidence in the record that Modern's accountants and attorney possessed, or reasonably appeared to possess, sufficient relevant expertise to warrant reliance on their judgment. The only evidence petitioners did present on this subject would support an inference to the contrary. Shindel testified that Tompkins, the accountant employed by Modern to handle most return preparation, had failed the C.P.A. examination. Whether Klein's field of legal expertise included tax matters remains unclear. No one associated with Modern impressed Shindel as being competent to handle the tax questions at issue.

There is no evidence that expert advice regarding the foreign payments was solicited by or on behalf of any of petitioners before Shindel conducted his investigation. The record does not establish when Shindel sought and received the expert tax attorneys' advice: at one point his testimony fixes the start of his consultations with them in early 1990, and at another point, in late 1991 or 1992. The Forms 1042 for the last year of payments would have been due by March 15, 1992. Sec. 1.1461-2(b)(1), Income Tax Regs. There is no record of what the tax attorneys advised Shindel, nor to which payments and which tax years the advice related. Shindel's testimony is ambiguous as to the identity of the clients on whose behalf he consulted the tax attorneys. There is no evidence that petitioners solicited, authorized, or were cognizant of Shindel's

investigations, or that they were ultimately informed of the tax attorneys' advice.

Moreover, petitioners have not attempted to prove that they supplied their accounting service with all necessary information concerning the payments and payees. Regarding the "loans" to Fun Films in January 1985, Shindel found at Modern no records besides the canceled checks. Moreover, petitioners have not established that their failure to report and withhold tax was in fact based on advice from their accounting service. Petitioners have not carried their burden of proving reasonable reliance.

### 3. Loans

Petitioners argue that their honest belief that the payments made to Fun Films in January 1985 were loans establishes reasonable cause for failing to file Forms 1042 and withhold and deposit tax with respect to those payments. It is true that loans would not have been subject to the Form 1042 or withholding requirements. Secs. 1442(a), 881(a); sec. 1.1461-2(b)(1) and (c)(1), Income Tax Regs. However, the fact that petitioners treated these payments as loans does not establish reasonable cause unless this treatment had a reasonable basis. Petitioners failed to offer any evidence supporting the loan characterization. They stipulated the absence of any documentation confirming the existence of a debtor-creditor relationship and to the failure of Fun Films to treat the

transactions as bona fide loans.  We can only conclude that they have not satisfied their burden of showing reasonable cause.

### 4.  Payees' Failure To Secure Treaty Exemption

Petitioners seek to excuse their failure to withhold and deposit tax on payments made to the Netherlands Antilles corporations, Caribbean Films and European Investments, on the ground that these payments would have been exempt from withholding under the United States-Netherlands income tax convention, as applied to the Netherlands Antilles, but for the fact that the Netherlands Antilles corporations failed to follow certain procedures for certifying their eligibility for the exemption.  See sec. 1.1441-6(b) and (c), Income Tax Regs.; Rev. Proc. 79-40, 1979-2 C.B. 504.

There is no evidence, however, that petitioners decided not to withhold and deposit tax in the belief that the foreign payees had filed or would file the requisite certificates.  On the contrary, since petitioners also failed to withhold and deposit tax with respect to payments made to other foreign corporations that would not have been eligible for an exemption, it is reasonable to conclude that the availability of an exemption under the United States-Netherlands income tax convention had nothing to do with their failure.

### 5.  Subsequent Good Faith Efforts

Finally, petitioners call our attention to their cooperation with the IRS to uncover the extent of the prior payments and

their belated efforts to comply with the law after the errors were discovered. They believe this conduct attests to their good faith and militates against an inference of willful neglect. According to Revenue Agent Petzold's uncontroverted testimony, Shindel presented to her in 1993 a summary of payments for prior years. Shindel testified that he could not recall whether the payment summary was given to Petzold before or after she uncovered evidence of the payments herself and questioned him about them. She testified that it was she who raised the issue first. Compliance efforts made years after the obligations arose and only after prompting by an examining agent are not inconsistent with the inference that the original failure to comply was due to willful neglect.

We conclude that petitioners have not shown that their failure to file returns and deposit tax for the years at issue was due to reasonable cause and not due to willful neglect. Accordingly, we sustain respondent's determination that they are liable for additions to tax under sections 6651(a)(1) and 6656(a).

Additions to Tax Under Section 6653(a)

Respondent determined that petitioners are liable for the additions to tax under section 6653(a). For the taxable years at issue section 6653(a) provided for an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. For taxable years 1981

through 1987 the amount of the addition to tax was 5 percent of the entire underpayment plus 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. Sec. 6653(a)(1) and (2) (taxable years 1981 through 1985); sec. 6653(a)(1)(A) and (B) (taxable years 1986 and 1987). For taxable years 1980 and 1988 the addition to tax was an amount equal to 5 percent of the underpayment. Sec. 6653(a) (for taxable year 1980); sec. 6653(a)(1) (for taxable year 1988). Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The taxpayer bears the burden of proof. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Failure to file timely tax returns constitutes prima facie evidence of negligence. Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990). "The type of evidence necessary to meet or rebut a prima facie case of negligence arising in a late filing situation is that which indicates the existence of an adequate and reasonable excuse or justification for the delinquent filing." Id. at 350. Where the taxpayer's evidence is insufficient to prove reasonable cause and absence of willful neglect for purposes of section 6651(a)(1), the taxpayer cannot carry its burden of proof for purposes of

section 6653(a).  Condor Intl., Inc. v. Commissioner, 98 T.C. 203, 225 (1992).

The arguments petitioners have presented to contest the addition to tax under section 6653(a) are the same arguments that we have assessed and rejected above.  It would serve no purpose to repeat that discussion.  Petitioners have not carried their burden of proof.

To reflect the foregoing,

Decisions will be entered

for respondent.