T.C. Memo. 1996-234


UNITED STATES TAX COURT


DEJA VU, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3890-94.                    Filed May 22, 1996.


Edith S. Thomas and Robert E. Miller, for petitioner.

Alexandra E. Nicholaides and Eric R. Skinner, for
respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  Deja Vu, Inc., petitioned the Court to
redetermine respondent's determination of the following
deficiencies in Federal income taxes, addition to tax under
section 6651(a)(1), and accuracy-related penalties under section
6662:

| Taxable Year Ended May 31 | Deficiencies | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662 |
|---|---|---|---|
| 1990 | $2,687 | $672 | $537 |
| 1991 | 14,677 | --- | 2,935 |
| 1992 | 16,546 | --- | 3,309 |

Following concessions, we must decide:

1.  Whether funds advanced by petitioner to a related corporation are deductible under section 166 as a bad debt. We hold they are not.

2.  Whether petitioner is liable for the addition to tax for delinquency determined by respondent under section 6651(a)(1).  We hold it is.

3.  Whether petitioner is liable for the accuracy-related penalties determined by respondent under section 6662.  We hold it is.

Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.  We refer to petitioner's taxable year ended May 31, 1990, as the 1989 taxable year.  We refer to petitioner's taxable year ended May 31, 1991, as the 1990 taxable year.  We refer to petitioner's taxable year ended May 31, 1992, as the 1991 taxable year.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated

herein by this reference. Petitioner's principal place of business was in Lansing, Michigan, when it petitioned the Court. It filed a Form 1120, U.S. Corporation Income Tax Return, for each year in issue using a fiscal year ended May 31 and an accrual method of accounting. Its 1989, 1990, and 1991 Forms 1120 were filed on October 15, 1991, February 27, 1992, and January 19, 1993, respectively.

At all times relevant herein, petitioner was a member of an organization of over 50 businesses that were engaged in the adult entertainment industry. All of these businesses were wholly or partially owned by Harry V. Mohney (Mr. Mohney) either directly or indirectly through various trusts.

In 1966, Mr. Mohney began acquiring (and operating as sole proprietorships) numerous enterprises that were primarily engaged in adult entertainment. In the early 1970's, Mr. Mohney organized each aspect of his businesses as a separate corporation. Mr. Mohney also established five domestic trusts, of which he and his four children were beneficiaries. Each of these trusts owned an interest in another domestic trust, the Durand Trust, which owned all the stock of Dynamic Industries, Ltd., which owned many of Mr. Mohney's operating companies. Mr. Mohney, together with three family members and a business associate, Elizabeth L. Scribner, was also a beneficiary of a foreign trust that owned all the stock of several foreign holding companies, which owned all the stock of various foreign and

domestic operating companies including Adult Fun Center, Inc.
(Adult Fun), a domestic corporation.  Prior to the years in
issue, Adult Fun was an adult novelty store with its principal
place of business in Phoenix, Arizona.

Petitioner operated a live entertainment night club in
Toledo, Ohio.  Petitioner also provided operational, management,
and consulting services to adult entertainment clubs doing
business as "Deja Vu".  Donald Krontz (Mr. Krontz), who served as
petitioner's president during the subject years, made all of
petitioner's executive decisions in consultation with Mr. Mohney.

In 1990, Adult Fun relocated to a store adjoining petitioner
in Toledo, Ohio, to sell adult lingerie.  Adult Fun solicited
funds from petitioner to remodel its new location and to start-up
its business there.  Beginning on February 9, 1990, petitioner
made unsecured cash advances to Adult Fun that were evidenced by
the following promissory notes (Notes):

| Date | Amount | Interest Rate | Repayment Schedule |
|------|--------|---------------|--------------------|
| Apr. 13, 1990 | $6,117 | 10% | $150/month |
| May 5, 1990 | 2,000 | 10% | 500/month |
| June 6, 1990 | 17,468 | 10% | 250/month |
| Aug. 8, 1990 | 3,000 | 10% | 200/month |
| Oct. 18, 1990 | 1,000 | 10% | previously agreed |
| Total | 29,585 | | |

The advances were not, in all instances, contemporaneous with the
execution of a note.  For example, petitioner paid $5,000 to a
construction firm on February 9, 1990, and it paid an additional
amount to the same firm on April 13, 1990.  These funds, which
were paid to remodel Adult Fun's new location, were reflected in

the note dated April 13, 1990.  Petitioner also advanced $11,968 to Adult Fun on March 9, 1990, for remodeling.  This advance was reflected in the June 6, 1990, note.

In addition to the advances above, petitioner made the following cash advances to Adult Fun:

| Date | Amount |
|------|--------|
| May 2, 1990 | $150 |
| May 29, 1990 | 285 |
| Aug. 8, 1990 | 15 |
| Total | 450 |

Petitioner added these three cash advances onto the note dated April 13, 1990.

Petitioner did not require collateral, take back liens or personal guarantees, or request to examine Adult Fun's books, tax returns, or financial statements before or after making any of the advances.  On its books, petitioner recorded the advances as loans.  Adult Fun recorded the advances as debts.[1]  Adult Fun did not make any payments on the Notes.

Adult Fun began a business under the name "Deja Vu Boutique" sometime in May or June 1990.  Shortly after it opened,

---

[1] Adult Fun's taxable year ended on Feb. 28.  With the exception of the advances and a $50 payable for State income taxes, Adult Fun's balance sheet on Feb. 28, 1991, listed no liabilities.  The balance sheet on Feb. 28, 1991, listed assets of $20,724, which were the leasehold improvements mentioned below.  Those improvements were the only asset that Adult Fun had reported on a yearend balance sheet since Feb. 28, 1987.  Adult Fun's balance sheet on Feb. 28, 1987, listed total assets of $1,077 and total liabilities of $106,192.  Adult Fun listed paid-in capital of $6,000 on each of its yearend balance sheets from Feb. 28, 1987 to Feb. 28, 1991.

petitioner's management determined that Adult Fun was not doing well, and petitioner made further advances to Adult Fun. By November 1990, Adult Fun ceased its payroll, and released its employees. In early 1991, Adult Fun closed its store and discontinued its business activities. On April 10, 1992, petitioner and Adult Fun agreed that petitioner would be assigned Adult Fun's leasehold improvements on account of the $30,035 in advances ($29,585 + $450) made by petitioner to Adult Fun. The parties agreed that the value of the assigned property was $21,000.

For Federal income tax purposes, Adult Fun reported net operating losses (NOL's) of $71,032 and $40,083 for its 1985 and 1986 taxable years, respectively. For its 1987 taxable year, Adult Fun reported taxable income (before application of any net operating loss deduction) of $105,115. All of this income was attributable to cancellation of debt. For its 1988 and 1989 taxable years, Adult Fun reported no gross receipts and no taxable income. For its 1990 taxable year, Adult Fun reported total income of $3,662 and a taxable loss (before application of any net operating loss deduction) of $4,266.

Petitioner engaged Modern Bookkeeping Services, Inc. (MBS), another Mohney related entity, to provide it with bookkeeping and tax preparation services. MBS retained David Shindel (Mr. Shindel), a certified public accountant, to prepare petitioner's Federal income tax returns. Mr. Shindel prepared

all of petitioner's Federal income tax returns that are in issue herein.

OPINION

1. Bad Debt

We must decide whether, for the 1991 taxable year, section 166(a) lets petitioner deduct the excess advances of $9,035 ($30,035 - $21,000), or whether the advances were contributions to Adult Fun's capital. Whether a payment represents debt or equity is a question of fact. Roth Steel Tube Co. v. Commissioner, supra at 629. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

A taxpayer may deduct worthless debts. Sec. 166(a). The term "debt" connotes a true debtor-creditor relationship that obligates the debtor to pay the creditor a fixed or determinable sum of money. Sec. 1.166-1(c), Income Tax Regs. Capital contributions are not debt. Capital contributions are equity. Roth Steel Tube Co. v. Commissioner, 800 F.2d 625, 629 (6th Cir. 1986), affg. T.C. Memo. 1985-58; Raymond v. United States, 511 F.2d 185, 189 (6th Cir. 1975); Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 284 (1990).

Courts refer to numerous factors to determine whether a payment represents debt or equity. The Court of Appeals for the Sixth Circuit, to which appeal in this case lies, refers primarily to 11 factors. See Roth Steel Tube Co. v. Commissioner, supra at 630. These factors are: (1) The names

given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed interest rate and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayment.  Id.; Raymond v. United States, supra at 190-191; Austin Village, Inc. v. United States, 432 F.2d 741, 745 (6th Cir. 1970); Berthold v. Commissioner, 404 F.2d 119, 122 (6th Cir. 1968), affg. T.C. Memo. 1967-102; Smith v. Commissioner, 370 F.2d 178, 180 (6th Cir. 1966), affg. T.C. Memo. 1964-278.  In distinguishing debt from equity, the economic substance of the transaction prevails over form. Byerlite Corp. v. Williams, 286 F.2d 285, 291 (6th Cir. 1960).

We turn to these factors to determine whether petitioner and Adult Fun intended to create a debt, and whether their intention comported with the economic reality of a debtor-creditor relationship.

### i.   Name of Certificate

We look to the name of the certificate evidencing purported debt to determine the "debt's" true label. The issuance of a note weighs toward debt. Estate of Mixon v. United States, 464 F.2d 394, 403 (5th Cir. 1972). The mere fact that a taxpayer issues a note, however, is not dispositive of debt. An unsecured note, with no payments made thereon until long after the due date, weighs toward equity. Stinnett's Pontiac Serv. Inc. v. Commissioner, 730 F.2d 634, 638 (11th Cir. 1984), affg. T.C. Memo. 1982-314.

Although Adult Fun issued the Notes with respect to the advances, and the Notes bore a stated interest rate of 10 percent, we give these facts little weight. The Notes were unsecured, and Adult Fun did not repay the amounts reflected therein according to the Notes' terms. Petitioner focuses on the fact that it recorded debt on its books in connection with the transfer. We are not impressed. Under the facts herein, petitioner's accounting entry lends little (if any) support for a finding of debt. See Raymond v. United States, supra at 185. This is especially so, given the fact that the parties were dealing at other than arm's length.

This factor is neutral.

### ii.   Fixed Maturity Date

The presence of a fixed maturity date weighs toward debt, but is not dispositive of a debtor-creditor relationship.

American Offshore, Inc. v. Commissioner, 97 T.C. 579, 602 (1991).
The presence of a fixed maturity date may be offset by other
facts in the record.

The Notes had a set repayment schedule. The presence of
this schedule, however, is downplayed by the fact that Adult Fun
made no payments in accordance therewith. Petitioner also did
not pursue collection or inquire as to payment until Adult Fun
was defunct. The facts at hand indicate that a debtor-creditor
relationship was not contemplated by petitioner or Adult Fun.
The actions of the parties to the Notes speak louder than words.
Their actions are uncharacteristic of a bona fide debtor-creditor
relationship.

This factor weighs toward equity.

### iii.   Interest Rate and Payments

The presence of a fixed rate of interest and actual interest
payments weigh toward debt. The absence of payments in
accordance with the terms of a debt instrument weighs toward
equity. American Offshore, Inc. v. Commissioner, supra at 605.

Although the notes bore an interest rate of 10 percent,
Adult Fun made no principal or interest payments to petitioner
(ignoring, for the moment, the transfer of the leasehold
improvements). The record also indicates that petitioner took no
meaningful steps to enforce any amounts that were due under the
terms of the Notes.

This factor weighs toward equity.

iv.    Repayment

Repayment that is dependent upon corporate earnings weighs toward equity.  Repayment that is not dependent on earnings weighs toward debt.  Roth Steel Tube Co. v. Commissioner, 800 F.2d at 632; Lane v. United States, 742 F.2d 1311, 1314 (11th Cir. 1984); American Offshore, Inc. v. Commissioner, supra at 602.  Purported debt is usually equity when repayment is at the whim of the vagaries of the business.  Segel v. Commissioner, 89 T.C. 816, 830 (1987).

Repayment of the advances was dependent solely on the financial success of Adult Fun.  Immediate repayment was not available from Adult Fun's existing assets as Adult Fun had virtually no assets.  At the time petitioner made its advances, Adult Fun had not yet begun operations and had regularly sustained losses.  In essence, petitioner gambled that Adult Fun's operations would be successful and lost.  Advances made under these conditions are not bona fide debt.

This factor weighs toward equity.

v.    Capitalization

Thin or inadequate capitalization weighs toward equity. Advances made to a corporation with an excessive debt to equity ratio are indicative of equity rather than debt.  Roth Steel Tube Co. v. Commissioner, supra at 632.

The record indicates that Adult Fun had virtually no assets.

This factor weighs toward equity.

### vi.  Identity of Interest

Advances made by stockholders in proportion to their respective stock ownership weighs toward equity.  A sharply disproportionate ratio between a stockholder's ownership percentage in the corporation and the debt owing to the stockholder by the corporation generally weighs toward debt. Roth Steel Tube Co. v. Commissioner, supra at 630; Estate of Mixon v. United States, 464 F.2d 394, 409 (1972); American Offshore, Inc. v. Commissioner, supra at 604.  Family solidarity and other legal or economic affiliations may neutralize the significance of any disproportionate ratio.  See C. M. Gooch Lumber Sales Co. v. Commissioner, 49 T.C. 649 (1968).

Although petitioner did not have a direct stock interest in Adult Fun, petitioner and Adult Fun shared a legal and economic relationship as parts of Mr. Mohney's larger enterprise.  Indeed, petitioner's president testified that all of petitioner's executive decisions were made in consultation with Mr. Mohney.

This factor weighs toward equity.

### vii.   Presence or Absence of Security

The absence of security for purported debt weighs toward equity.  Roth Steel Tube Co. v. Commissioner, supra at 632; Lane v. United States, 742 F.2d 1311, 1317 (11th Cir. 1984); Raymond v. United States, 511 F.2d 185, 191 (6th Cir. 1975); Austin Village, Inc. v. United States, supra at 745.

Petitioner did not receive (nor did it attempt to receive) any type of security interest or personal guarantees for its advances. If Adult Fun's business did not prosper, petitioner could only recover its advances from its share of the proceeds which remained after obligations to secured creditors were satisfied. Indeed, when petitioner accepted an assignment from Adult Fun in 1992, all that remained were various leasehold improvements. Mr. Krontz explained that he did not require security because of the relationship between Adult Fun and petitioner as members of Mr. Mohney's enterprises, their physical proximity to each other, and his business relationship with Adult Fun's president. We find this testimony unpersuasive of a bona fide debtor-creditor relationship. We do not believe that an outside lender would have loaned substantial sums to Adult Fun in an arms-length transaction under the facts at hand. Once again, the actions of the parties to the Notes speak louder than words, and those actions do not support a true debtor-creditor relationship with respect to the advances.

This factor weighs toward equity.

### viii.  Inability to Obtain Financing

The question of whether a transferee could have obtained comparable financing is relevant in measuring the economic reality of a transfer. Estate of Mixon v. United States, 464 F.2d at 410; Nassau Lens Co. v. Commissioner, 308 F.2d 39, 47 (2d Cir. 1962) remanding 35 T.C. 268 (1960). Evidence that the

taxpayer could not obtain loans from independent sources weighs toward equity. Calumet Indus., Inc. v. Commissioner, 95 T.C. at 287. We look to whether the terms of the purported debt were a "patent distortion of what would normally have been available" to the debtor in an arms-length transaction. See Litton Business Sys., Inc. v. Commissioner, 61 T.C. 367, 379 (1973).

Petitioner presented no evidence on whether it could have obtained financing from an unrelated party at the time of the transfer. Given the facts, however, that the purported debts were completely unsecured and that Adult Fun did not have a profitable history at the time of the advances, we are left unpersuaded that an unrelated third party would have entered into financing with Adult Fun under the terms that petitioner alleges were entered into between it and Adult Fun. Indeed, we read the record to indicate that it would have been unreasonable for petitioner to have expected repayment of the advances at the time they were made. Petitioner made no attempt to evaluate Adult Fun's prospects for success. It did not request any financial statements or tax returns in order to evaluate Adult Fun's financial condition. It did not ask to examine Adult Fun's books and, if it had, it would have seen that Adult Fun's tax returns reported a pattern of losses. The advances were placed at the risk of Adult Fun's business, and the terms of the advances were a patent distortion of what would normally have been available in an arm's-length transaction.

This factor weighs toward equity.

ix.   Subordination

Subordination of purported debt to the claims of other creditors weighs towards equity.  Roth Steel Tube Co. v. Commissioner, supra at 631-632; Stinnett's Pontiac Serv. Inc. v. Commissioner, 730 F.2d at 639; Raymond v. United States, 511 F.2d at 191; Austin Village v. Commissioner, supra at 745.

Petitioner presented no evidence on the order of priority of Adult Fun's debts.  Given the fact, however, that the advances were unsecured, petitioner's right to repayment would have been subordinate to the interests of the secured creditors, if any. At best, petitioner and the other unsecured creditors could have shared in the proceeds that remained after the secured creditors were satisfied.

This factor weighs toward equity.

x.  Use of Funds

The transfer of funds from a shareholder to a corporation in order to meet the corporation's daily business needs weighs toward debt.  The transfer of funds from a shareholder to a corporation in order to purchase capital assets weighs toward equity.  Roth Steel Tube Co. v. Commissioner, 800 F.2d at 632; Stinnett's Pontiac Serv. Inc. v. Commissioner, supra at 640; Raymond v. United States, supra at 191.

The purported notes represented a long term commitment that was payable mainly from future income.  While some of the

advances were presumably intended to meet Adult Fun's daily needs, the majority of the funds were used for remodeling expenses.

This factor weighs toward equity.

### xi.  Presence or Absence of a Sinking Fund

The failure to establish a sinking fund for repayment weighs toward equity.  Roth Steel Tube Co. v. Commissioner, supra at 632; Lane v. United States, 742 F.2d at 1317; Raymond v. United States, supra at 191; Austin Village v. Commissioner, 432 F.2d at 745.

The record does not indicate that Adult Fun established a sinking fund for the repayment of the purported notes.  To the contrary, repayment was to come solely from Adult Fun's earnings.

This factor weighs toward equity.

### xii.  Conclusion

The advances were contributions to Adult Fun's equity. Accordingly, petitioner may not deduct any loss on the advances under section 166(a).

### 3.  Section 6651

Respondent determined an addition to tax under section 6651(a)(1), asserting that petitioner failed to file a timely Federal income tax return for the 1989 taxable year.  In order to avoid this addition to tax, petitioner must prove that its failure to file timely was:  (1) Due to reasonable cause and (2) not due to willful neglect.  Sec. 6651(a); Rule 142(a);

United States v. Boyle, 469 U.S. 241, 245 (1985); Catalano v. Commissioner, 81 T.C. 8 (1983).  A failure to file timely is due to reasonable cause if the taxpayer exercised ordinary business care and prudence, and, nevertheless, was unable to file the return within the prescribed time.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect means a conscious, intentional failure or reckless indifference.  United States v. Boyle, supra at 245.

Petitioner filed its return for its 1989 taxable year almost 8 months past the due dates prescribed in sections 6072(b) and 6081(b).  Petitioner has provided no evidence to overcome respondent's determination that it is liable for the addition to tax for failure to file timely.  We sustain respondent on this issue.

4.  Section 6662

Respondent also determined accuracy-related penalties under section 6662 for petitioner's 1989, 1990, and 1991 taxable years.  Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the portion of the underpayment that is attributable to negligence.  Sec. 6662(b)(1).  For purposes of section 6662(a), "negligence" includes a "failure to make a reasonable attempt to comply with the Internal Revenue Code", and "disregard" includes careless, reckless, or intentional disregard.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) of the Internal Revenue Code provides a reasonable cause exception to the accuracy-related penalty.

Petitioner argues that it is within the exception under section 6664. Petitioner argues that it held an honest and good faith belief about the deductibility of its unrecovered advances based on its reasonable reliance on MBS to ensure tax compliance. Petitioner also argues that it was unsophisticated in tax laws and that it relied on MBS to provide Mr. Shindel with enough information to ensure proper compliance with those laws. Although MBS failed to do its job properly, petitioner concludes, petitioner's reliance on them to do a proper job was consistent with ordinary business care and prudence under the circumstances.

We do not agree. Reasonable reliance on a tax adviser is consistent with ordinary business care and prudence only in certain cases. In those cases, the taxpayer must establish that: (1) The adviser had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. See, e.g., Ellwest Stereo Theatres of Memphis, Inc. v. Commissioner, T.C. Memo. 1995-610. Mr. Shindel prepared and signed petitioner's tax returns for the years in issue. His experience and qualifications were sufficient to warrant reliance upon his judgement. Although we find that petitioner has met the first prong, we find that it has failed to satisfy the remaining prongs. Petitioner did not exercise due

care, and it failed to do what a reasonable and ordinarily prudent person would have done under the circumstances. Petitioner knew it was required to file timely a Federal income tax return for each year in issue, but it neglected to do so for its 1989 taxable year.  Given the fact that taxpayers have a statutory duty to file timely income tax returns, we believe that a reasonable and ordinarily prudent person would have complied with the statutory duty to file timely such a return.  We also believe that breach of this duty is evidence of negligence. Condor Intl., Inc. v. Commissioner, 98 T.C. 203, 225 (1992), affd. in part, revd. in part 78 F.3d 1355 (9th Cir. 1996); Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990).  The fact that petitioner was negligent in the instant case is also supported by the fact that petitioner erroneously claimed deductions for the interest expenses and its shareholder's legal fees.  See Condor Intl., Inc., v. Commissioner, supra at 225; Emmons v. Commissioner, supra at 349. We sustain respondent on this issue.

We have considered all of petitioner's arguments for contrary holdings and, to the extent not addressed above, find them to be without merit.

To reflect concessions by respondent,

Decision will be entered

under Rule 155.