T.C. Memo. 1999-390

UNITED STATES TAX COURT

DANÉ MARIE SMILEY AND RICHARD DEAN SMILEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13712-98.                    Filed December 1, 1999.

Dané Marie Smiley and Richard Dean Smiley, pro se.

<u>Reid M. Huey</u>, for respondent.


MEMORANDUM OPINION

POWELL, <u>Special Trial Judge</u>:  Respondent determined deficiencies in petitioners' 1995 and 1996 Federal income taxes and accuracy-related penalties under section 6662(a)[1] as follows:

|  | | Penalty |
| Year | Deficiency | Section 6662(a) |
| 1995 | $3,875 | $771 |
| 1996 | 2,505 | 501 |

---

[1]  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue.

The issues are whether petitioners are entitled to deductions for alleged expenses incurred in the construction of a home for the mother of petitioner Richard Dean Smiley (petitioner) and whether petitioners are liable for the section 6662(a) penalties.

The facts may be summarized as follows. Petitioners resided in Blaine, Minnesota, at the time the petition was filed. Before 1984 petitioner had manufactured bedroom furniture. In 1984, petitioner sold the business and began constructing single unit houses. In 1991, petitioner quit that business and became a "house husband". In 1994, petitioner entered into an agreement with his mother whereby he agreed to construct a house for her in Detroit Lakes, Minnesota. According to petitioner, his mother owned a lot in Detroit Lakes that she quit-claimed to him. On August 3, 1994, petitioner and his mother entered into a written contract whereby petitioner sold the lot and a "house built new" to her for $200,000. The closing date specified was February 1, 1995.

Petitioner commenced construction on the house in August 1994. Sometime in November 1994, the partially built house was severely damaged in a storm. Petitioner allegedly had insurance on the house; the insurance company, however, has not paid for the storm damage. Apparently, petitioner continued to work on the house. On April 28, 1995, petitioner and his mother executed

another document called a "bid", whereby petitioner estimated that the storm damage would cost $64,900 to repair. Petitioner has no workups either of the original cost of constructing the house or of the estimated repair expenses. Petitioner did not have any documentation for the subcontracting work. According to petitioner, he estimated the following expenses: Materials ($120,000), employee wages ($50,000), and travel, meals, and lodging ($10,000). Petitioner is not licensed as a contractor, plumber, or electrician.

It is unclear when the house was completed or, if in fact the property had been conveyed to him, when petitioner reconveyed the property to his mother. Petitioner testified that over the years 1994 to 1997 his mother paid him $200,000, but he did not know how much or when the payments were made. Petitioners did not report any of these payments on their Federal income tax returns for the years in issue. On January 5, 1998, petitioner filed a mechanic's lien against the property in the amount of $64,900.

Petitioner allegedly drove from his home to Detroit Lakes each week. On Schedules C filed with the 1995 and 1996 returns, petitioners reported no income and claimed the following expenses:

|                        | 1995    | 1996    |
|------------------------|---------|---------|
| Car & truck expenses   | $11,625 | $7,007  |
| Legal expenses         | 1,956   | 3,000   |
| Office expenses        | 235     | 235     |
| Repairs & maintenance  | -0-     | 1,000   |
| Travel                 | 4,200   | 2,450   |
| Meals & entertainment[1] | 3,250 | 1,896   |
| Utilities              | -0-     | 400     |
| Other expenses         | 2,023   | 700     |
|                        | 23,289  | 16,688  |

[1]For 1995 and 1996, petitioner claimed total meal expenses of $6,500 and $3,792, respectively, and reduced those figures by 50 percent. See sec. 274(n).

With regard to the car and truck expenses, petitioner allegedly drove a 1985 Chrysler automobile to and from the construction site. He computed the mileage between his home and Detroit Lakes and multiplied that figure by the number of trips he made each year. He then added the mileage he estimated was incurred while working in Detroit Lakes. Petitioner did not maintain contemporaneous logs or records of his mileage. The meal expenses were also estimated, and petitioner has no records of these expenses. The travel expenses were presumably for lodging while in Detroit Lakes. Petitioner has no receipts, canceled checks, or other documentation of these expenses.

The legal expenses allegedly were incurred in seeking advice concerning petitioner's suit against the insurance company to recover damages from the November 1994 storm. Petitioner has no documentation of these expenses and claims that the attorneys with whom he consulted would not provide corroborating evidence.

With respect to the utility expenses, petitioner produced telephone bills in the name of his mother (Helen Smiley) for telephone service at Detroit Lakes from February through July 1995. There is no information as to who paid these expenses or when they were paid. There is no documentation concerning the other expenses claimed.

Respondent disallowed the expenses for lack of substantiation and also contends that the claimed expenses were not incurred in an activity entered into for profit.

## Discussion

Section 162(a) allows deductions for ordinary and necessary expenses paid or incurred in carrying on a trade or business. Under section 274(d), however, a taxpayer may not deduct the use of a passenger vehicle and lodging and meal expenses unless he or she substantiates the amount of the expense, the time and place of the travel, and the business purpose of the travel with adequate records or sufficient evidence corroborating his or her statement. See Miner v. Commissioner, T.C. Memo. 1999-358. Generally, "to meet the 'adequate records' requirements of section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record". Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017

(Nov. 6, 1985).  Petitioner did not maintain any such records[2] and he has not otherwise properly substantiated the expenses claimed for car and truck, travel, and meals.

With regard to the other Schedule C expenses claimed there is also no substantiation.  As far as the explanation that the attorneys he consulted would not provide receipts, etc., it is unpersuasive.  Similarly there are no substantiating receipts, canceled checks, etc., with regard to the other expenses claimed.  Respondent's determinations are sustained.

It also should be noted that generally expenses associated with the building or improvement of a house must be capitalized if incurred in a profit-seeking activity.  See Homes By Ayres v. Commissioner, 795 F.2d 832, 835 (9th Cir. 1986), affg. T.C. Memo. 1984-475; W.C. & A.N. Miller Dev. Co. v. Commissioner, 81 T.C. 619 (1983); see also sec. 263A.  These expenses, if in fact they were incurred by petitioner, were directly attributable to the construction of the house.  Since the sale of the house to petitioner's mother did not occur during either of the years before the Court, even if the claimed expenses had been substantiated, they would not be allowable as ordinary and

---

[2] Petitioner provided a so-called mileage log that he constructed just before the trial allegedly based on receipts that he did not produce.  This does not meet the adequate records requirement.

necessary expenses of a trade or business during the years in issue.

In light of the above, we find it unnecessary to explore whether or not petitioner's home building activity was entered into for profit. We note, however, that there is a strong suggestion that petitioner's primary motivation seems to have been the building of a house for his mother rather than making a profit.

Respondent also determined that petitioners are liable for accuracy-related penalties under section 6662(a) for 1995 and 1996 for negligence. Section 6662(a) provides that "there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies." Section 6662 applies to "the portion of any underpayment which is attributable to", inter alia, negligence or disregard of rules or regulations. Sec. 6662(b)(1). Negligence "includes any failure to make a reasonable attempt to comply with the provisions of * * * [the Internal Revenue Code], and the term 'disregard' includes any careless, reckless, or intentional disregard." Sec. 6662(c).

Petitioners argue that they employed a qualified tax return preparer and any errors were due to the return preparer. In some circumstances reliance upon a qualified return preparer may alleviate a taxpayer's liability for penalties. See Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without

published opinion 940 F.2d 1534 (9th Cir. 1991); sec. 1.6664-4(b)(1), Income Tax Regs. The taxpayer must advise the preparer of all facts that are relevant to the tax treatment of an item. See sec. 1.6664-4(c)(1)(i), Income Tax Regs.; see also Ellwest Stereo Theatres, Inc. v. Commissioner, T.C. Memo. 1995-610. The advice must not be based upon unreasonable factual or legal assumptions. See sec. 1.6664-4(c)(1)(ii), Income Tax Regs.

There is nothing in this record indicating that petitioners advised the return preparer of all the facts and circumstances surrounding the expenses claimed. Moreover, petitioner's recordkeeping was nonexistent. We sustain respondent's determinations as to the penalties under section 6662(a).

Decision will be entered

for respondent.